Filed 6/8/16  P. v. Toliver CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>REUBEN TOLIVER,<br><br>        Defendant and Appellant. | A143471<br><br>(Contra Costa County<br>Super. Ct. No. 141550-4) |

Reuben Toliver was convicted, following a jury trial, of being a felon in possession of a firearm.  On appeal, he contends (1) the trial court mistakenly imposed restitution fines above the statutory minimum; (2) he is entitled to additional days of presentence credit for time spent on electronic home detention; and (3) the minute order must be corrected to reflect the correct amount of fees the court imposed.  We shall modify the judgment to reflect 86 additional days of presentence credit for the time appellant was on electronic home detention, as well as the fee amounts actually imposed by the court.  We shall otherwise affirm the judgment.

**PROCEDURAL BACKGROUND**

On July 24, 2014, appellant was charged by information with being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)[1]—count one); being a violent offender in possession of a firearm (§ 29900, subd. (a)(1)—count two); and discharging a firearm with gross negligence (§ 246.3—count three).  It was further alleged that

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

appellant personally used a firearm in the commission of count three (§§ 667, 1192.7); that he was previously convicted of a serious and violent felony (§ 1170, subds. (f) & (h)(3)(A)); and that his prior out of state conviction was a strike (§§ 667, 1170.12).

On October 2, 2014, a jury found appellant guilty of counts one and two, but found him not guilty of count three.

On October 24, 2014, the parties agreed that the out of state prior conviction did not qualify as a strike in California and the court dismissed that allegation. The court also dismissed count two, at the prosecution's request, in the interest of justice. The court then sentenced appellant to two years in state prison on count one, but suspended execution of the sentence and placed appellant on probation for five years.

On October 27, 2014, appellant filed a notice of appeal.

**FACTUAL BACKGROUND**

*Prosecution Evidence*

Angela Higgins, who performed care-giving activities for appellant, testified that a male acquaintance twice gave her and another female a ride to appellant's house on a day in early December 2013. The first time they went there, Higgins had forgotten to bring appellant some cigarettes and soda he had asked her to buy for him, so she left. When they arrived at his residence the second time, the man stayed in the car in the driveway and Higgins and the female went to the front door. Appellant, who was on his scooter, unlocked the door. The female returned to the car, but Higgins walked inside carrying a bag. Appellant asked for his "stuff," and she said she had it. She was walking toward the dining room when appellant, who seemed upset, told her to shut the door. She therefore walked back toward the front door. As she did so, she saw appellant's hand come up; he was holding a gun. She then heard a gunshot and ran out of the house. She ran to the car in the driveway. The man who had given her a ride was still in the car, and the woman had just stepped out of the car. Higgins then used her cell phone to call police. Higgins testified that appellant always had a gun with him, but the gun she saw that day was a different one.

2

Richmond Police Officer Eric Moczulski testified that, on the evening of December 3, 2013, he was dispatched to a condominium unit in Richmond. When he arrived, he spoke with Higgins, who told him that she provided care for appellant. She said that she had gone to the residence to give him cigarettes and see how he was doing. As she walked toward the kitchen, he asked if she had his cigarettes. When told him she did not, they began to argue, and the argument became more and more heated. She told Moczulski that, as she prepared to leave, appellant removed a firearm with his right hand and fired a shot at her as she exited the front door. When Moczulski asked if appellant had ever assaulted her, she said no, but also said that a month and one-half earlier, he had threatened her life and pointed a firearm at her.

Moczulski then went inside the residence, where he saw appellant sitting on a wheelchair scooter in the middle of the living room. He also saw a .45 caliber Intratec semiautomatic firearm on a couch behind appellant. There was a bullet hole through the front door, about 10 to 11 inches above the floor. Appellant said he had given Higgins $100 the night before to go get him some cigarettes. When she returned that morning without the cigarettes or the money, he got mad and told her to leave, which she did. When she returned that evening, she again did not have the cigarettes and they began to argue. He told her to leave and as she walked to the front door, he became so mad that he removed a firearm from under his left leg and, "as he was closing the door, he discharged the firearm with the intent to intimidate or scare her." Appellant said he was 20 to 25 feet away from Higgins and pointing the gun downward and toward the door when he discharged the round. Appellant also told Moczulski that he had purchased the gun approximately two months earlier and had previously been convicted of a felony. Appellant seemed agitated and a "[l]ittle angry during the interview."

*Defense Evidence*

Appellant testified that when Higgins came into his home on the night in question, he heard male and female voices outside, talking and laughing. As Higgins went into his kitchen, he told her to leave, and she went outside. Appellant became "real scared" because, before leaving, Higgins had threatened him and he did not know who the man

3

outside was. He therefore pulled the gun out, put it behind the door, aimed it at the floor, and then shot it. He fired the gun into the wooden door after Higgins had gone outside. Appellant shot toward he floor so that the bullet—a hollow point—would not hurt anyone. It was a warning shot to keep the man outside from coming into his house to hurt him. Appellant had bought the gun about two months earlier, and he kept it loaded.

Appellant acknowledged that he had been convicted of a felony that reflects dishonesty. He also denied slashing at a subsequent caregiver, Sonja Pickens, with a switchblade on July 28, 2014.

### Rebuttal Evidence

Sonja Pickens testified that on July 28, 2014, she was at appellant's home when he became angry and started cursing at her. As she tried to leave, appellant blocked her way with his scooter, took a switchblade knife out of the backpack on his wheelchair, opened it, and slashed at her. The knife did not cut her because the dull side of the blade hit her leg. Pickens started to go around him when he swung the knife again and cut her on her right forearm.

## DISCUSSION

### I. Restitution Fines

Appellant contends the trial court imposed restitution fines above the statutory minimum even though it can be inferred that the court intended to impose only the minimum amount. This misunderstanding of the law, according to appellant, resulted in the court's failure to exercise its discretion and a violation of ex post facto principles.

In the probation report, the probation officer recommended that appellant be ordered to pay, inter alia, a $280 restitution fine pursuant to section 1202.4.[2] At the sentencing hearing, the court stated that it had read the probation officer's report and recommendation. It then imposed a restitution fine of $300, and also imposed a

---

[2] The probation officer also recommended that appellant be ordered to pay a parole revocation restitution fine pursuant to section 1204.5, in the same amount, suspended unless his parole were revoked.

4

probation revocation fine of $300, which it suspended. The court also imposed several other mandatory fees, and directed appellant to pay the cost of probation services, not to exceed $75 per month, based on appellant's ability to pay.[3]

Pursuant to section 1202.4, subdivision (b), when a defendant is convicted of a crime, the court is normally required to impose a restitution fine. "The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, two hundred eighty dollars ($280) starting on January 1, 2013, and three hundred dollars ($300) starting on January 1, 2014, and not more than ten thousand dollars ($10,000). . . ." (§ 1202.4, subd. (b)(1).) "In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (§ 1202.4, subd. (b)(2).) A defendant's "[i]nability to pay may be considered only in increasing the amount of the restitution fine in excess of the minimum fine pursuant to paragraph (1) of subdivision (b)." (§ 1202.4, subd. (c).) The court must also impose a probation revocation restitution fine in the same amount as the restitution fine. (§ 1202.44.) The amount of a restitution fine is calculated as of the date of the offense and its imposition is considered punishment, which makes it subject to the proscriptions of the ex post facto clause. (*People v. Souza* (2012) 54 Cal.4th 90, 143.)

Here, appellant claims we must infer that the court misunderstood the minimum restitution fine it could impose because it mistakenly believed it was supposed to impose the amount set forth in section 1202.4, subdivision (b)(1) that was applicable on the date of sentencing ($300), rather than the lower amount that was applicable at the time appellant committed the offenses ($280). Appellant argues that, in making this mistake,

---

[3] The court had earlier stated that it would not impose a probation condition requiring that appellant seek and maintain employment since he was "on disability."

the court failed to exercise its discretion and violated the state and federal constitutional prohibitions against ex post facto laws. He also argues, in the alternative, that defense counsel provided ineffective assistance by failing to object to the amount of these fines at sentencing. In his reply brief, appellant acknowledges that he has forfeited this claim due to defense counsel's failure to object to imposition of these fines at the sentencing hearing. (See *People v. Trujillo* (2015) 60 Cal.4th 850, 859 ["No reason appears why defendant should be permitted to appeal the sentencing court's imposition of [certain fees imposed at sentencing] after having thus tacitly assented below"].)

To prove ineffective assistance of counsel, appellant must show that "counsel's representation fell below an objective standard of reasonableness" "under prevailing professional norms" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668 , 688, 694 (*Strickland*).)

We need not determine whether counsel should have objected to the court's imposition of the $300 restitution and probation revocation fines because we conclude that appellant was not prejudiced by her failure to object. (See *Strickland*, *supra*, 466 U.S. at p. 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed"].) Appellant's claim—that "by imposing $300.00, which was the minimum restitution fine available at the time of sentencing, the court showed its desire to impose the lowest available fine"—is based on speculation and is not supported by the record.

First, the court indicated that it had read the probation officer's report and recommendation, in which the probation officer recommended a restitution fine in the amount of $280, the statutory minimum in effect on the date appellant committed his offense. Second, it is true the court knew that appellant was disabled and living on a fixed income, but this does not show that it necessarily intended to impose the lowest possible fines. Under the relevant statutes, based on when appellant committed his crimes, the court could have imposed a restitution fine of between $280 and $10,000 (§ 1202.4, subd. (b)(1), or, under the statutory formula, could have imposed the statutory

minimum and applied the multiplier (§ 1202.4, subd. (b)(2)).  The fines it actually imposed, just above the minimum permitted, were reasonable in light of appellant's offense and his financial circumstances.  (§ 1202.4, subds. (b)(1) & (c).)

Third, the general rule is " 'that a trial court is presumed to have been aware of and followed the applicable law.  [Citations.]'  [Citations.]  This rule derives in part from the presumption of Evidence Code section 664 'that official duty has been regularly performed.' . . .  [W]here a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order.  [Citation.]"  (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; see § 1202.4, subd. (d) [court is not required to make express findings "as to the factors bearing on the amount of the fine"].)  Although it is conceivable that the court in this case was in fact unaware that the statutory minimum in effect at the time appellant committed his offenses was $280, not $300 (§ 1202.4, subd. (b)(1)), in view of the evidence in the record and the presumption that the court knew and followed the applicable law, appellant has not shown that the court was unaware of its discretion and would have imposed the statutory minimum had counsel objected.

Hence, it is not reasonably probable that, "but for counsel's unprofessional errors, the result of the proceeding would have been different," and appellant's claim of ineffective assistance of counsel cannot succeed.  (*Strickland*, *supra*, 466 U.S. at pp. 694.)

## II.  *Presentence Credits*

Appellant contends he is entitled to an additional 76 days of presentence credits for time spent on electronic home detention.  Respondent agrees.

Appellant was released on electronic home detention between May 2, 2014 and July 29, 2014, when he was taken back into custody for violating the terms of his electronic home detention agreement.  At the sentencing hearing, the court sentenced appellant to two years in state prison, but stayed execution of the sentence and placed appellant on probation for five years, with the condition that he serve 180 days in county jail.  The court awarded him presentence credit for 88 days of actual time plus 88 days of

conduct credit for his time in jail custody. Although defense counsel requested that appellant receive credit for time spent on electronic home detention, the court stated: "I believe under the law that [appellant] is not entitled to custody credits for the pretrial Electronic Home Detention." The court further stated that it was relying on section 2900.5 and *People v. Anaya* (2007) 158 Cal.App.4th 608 for that conclusion. The court later awarded appellant two more days of actual credit and two more days of conduct credit for time spent on electronic home detention so that he could be released that night, rather than spending four more days in jail.

In *People v. Anaya*, *supra*, 158 Cal.App.4th at pages 612-613, the appellate court found that because the Legislature had omitted reference to presentence custody credit for "home detention" in subdivision (a) of section 2900.5, it must have intended to exclude home detention from the type of custody for which credits are awarded. In 2011, the Legislature amended section 2900.5, subdivision (a) to provide that a defendant will receive credit for "days served in home detention." (§ 2900.5, subd. (a), as amended by Stats. 2011, ch. 15, § 466.)

Appellant now argues that he should have received an additional 76 days of presentence credit for the time he spent on electronic home detention, less the two days of actual time and two days of conduct credit the court awarded him at sentencing. We agree that, when sentencing appellant, the court relied on the pre-2011 version of section 2900.5, which did not include credit for the period of electronic home detention. Appellant was on electronic home detention from May 2, 2014 until he was taken into custody on July 29, 2014. According to our calculation, that means he was on electronic home detention for 88 days, rather than the 78 days asserted by appellant. He must therefore be awarded an additional 88 days of credit for the time spent on electronic home detention, less the two days of credits he received at sentencing, for a total of 86 days.

### III. *Correcting the Minute Order*

Appellant contends the minute order must be corrected to reflect the amount of fees the court actually imposed. Respondent agrees.

8

At the sentencing hearing, the court imposed a court operations assessment (COA) fee of $40, pursuant to section 1465.8, and a criminal conviction assessment (CCA) fee of $30, pursuant to Government Code section 70373. However, the minute order incorrectly shows a COA fee of $80 and a CCA fee of $60. The minute order must therefore be corrected to reflect the fee amounts the trial court actually imposed. (See *People v. Farell* (2002) 28 Cal.4th 381, 384 [record of oral pronouncement of court controls over clerk's minute order].)

## DISPOSITION

The judgment is modified to reflect 86 additional days of presentence credit and to correct the amount of the CCA and COA fees listed in the October 24, 2014 minute order to reflect the amounts actually imposed by the court at sentencing. We shall otherwise affirm the judgment.

                                           _____

                                           Kline, P.J.

We concur:


_____
Stewart, J.


_____
Miller, J.


*People v. Toliver* (A143471)

10